# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

GARY A. THOMPSON, et al., on behalf of
all others situated,

       *Plaintiffs,*

vs.

       Case No. 11-CV-1338-EFM-KMH

TITUS TRANSPORTATION, LP, et al.,

       *Defendants.*

## MEMORANDUM AND ORDER

In this class action, fifteen named plaintiffs[1] assert claims both individually and as class representatives, alleging breach of contract, conversion, negligent misrepresentation, breach of fiduciary duty, and fraud.  Before the Court is the motion to dismiss or to transfer for improper venue based upon a forum-selection clause, jointly filed by Defendants Titus Transportation, LP; NEA Logistics, LLC; Titus Holdings, LLC; Titus Capital, LLC; PNT Properties, LP; and Polygon Network, LLC.[2]  For the reasons stated below, the Court denies Defendants' motion to dismiss or to transfer.

---

[1] The named plaintiffs include Gary A. Thompson, Ben Dudrey, Donnie Clouse, Galen R. McQueen, Gary McQueen, Jake Gaspen, Kevin Childs, Mark Tilton, Meme Schafer, Paul Crabtree, Steven Peterson, James M. Schroeder, Kenneth Crane, Paula M. Good, and Ron Broughton.

[2] The only non-moving defendant is NEAT Enterprises, LLC, which Plaintiffs have not served with process.  Notice of Removal, Doc. 1, at 2.

## I.      Factual and Procedural Background[3]

Defendant Titus Transportation, LP ("Titus Transportation") is a trucking company that specializes in the hauling and delivery of goods for the grocery industry.  The other defendants, NEA Logistics, LLC; Titus Holdings, LLC; Titus Capital, LLC; PNT Properties, LP; Polygon Network, LLC; and NEAT Enterprises, LLC, are affiliated companies that share certain aspects of management with Titus Transportation.[4]   Defendants have their corporate headquarters, corporate officers, accounting and human resources offices, principal places of business, and more than half of their employees in Denton County, Texas.  After executing an agreement to handle freight for a regional grocery franchise in March 2008, Defendants began engaging independent contractors to serve as drivers.

Plaintiffs are drivers who provided transportation services to Defendants as independent contractors.  They include fifteen named individuals who assert claims personally and as class representatives on behalf of all others similarly situated.  The fifteen named Plaintiffs include fourteen Kansas residents and one Iowa resident.[5]   Plaintiffs Gary Thompson, Kevin Childs, Donnie Clouse, Paul Crabtree, Ben Dudrey, Jake Gaspen, Paula Good, Gary McQueen, Galen McQueen, Steven Peterson, and Mark Tilton (hereafter "Contracting Plaintiffs") signed nearly identical agreements with Titus Transportation entitled "INDEPENDENT Contractor SERVICE AGREEMENT WITH FLEET OPERATOR" (collectively, the "Service Agreement").[6]   The remaining named Plaintiffs, Ron Broughton, Kenneth Crane, Meme Schafer, and James

---

[3] In accordance with the standards governing motions to dismiss under Fed. R. Civ. P. 12, all well-pleaded facts in the Complaint are assumed to be true to the extent they are not controverted by evidence presented by Defendants.  The Court views the facts and the evidence in the light most favorable to Plaintiffs.

[4] Affidavit of Brent Hagenbuch, Doc. 13-1, at 1.  Mr. Hagenbuch serves as the CEO of all Defendants.  *Id.*

[5] Notice of Removal, Doc. 1.

[6] Affidavit of Brent Hagenbuch, Doc. 13-1, at 2.

Schroeder (hereafter "Non-Contracting Plaintiffs"), did not execute written agreements with Defendants, but worked as drivers for Contracting Plaintiffs who executed a Service Agreement with Titus Transportation.

Plaintiffs allege that since March 2008, Defendants have improperly deducted money from Plaintiffs' pay for physical damage insurance and an additional insurance program which Defendants referred to as "9x insurance."[7]   The Service Agreement did not require physical damage coverage or "9x insurance," and Plaintiffs claim that they did not voluntarily elect such coverage.  Plaintiffs also allege that since May 2011, Defendants wrongfully deducted $6.00 per truck per week from the pay of each independent contractor for what Defendants referred to as an increase in Kansas personal property tax.  While the Service Agreement permits Defendants to deduct items such as taxes, Plaintiffs allege that Defendants failed to provide sufficient notice and neglected to provide specific calculations to support the amounts deducted.

Plaintiffs originally filed this action in the District Court for Reno County, Kansas, asserting claims for breach of contract, conversion, negligent misrepresentation, breach of fiduciary duty, and fraud.  Defendants removed the case to this Court on November 2, 2011, asserting that the United States District Court for the District of Kansas "has original jurisdiction over the claims alleged in plaintiffs' Complaint under 28 U.S.C. 1332(a)."[8]   Defendants now seek dismissal or transfer for improper venue based upon what Defendants argue is a mandatory forum-selection clause.  The Service Agreement includes the following provision:

> 58.  The validity, obligations, relationship of the Carrier and the Contractor and interpretation of the agreement are to be determined according to the laws of the state of Texas.  All sums due and payable and all rights enforceable hereunder, shall be due and payable and enforceable in Denton County, Texas.[9]

---

[7] Affidavit of Brent Hagenbuch, Doc. 13-1, at 6.

[8] Notice of Removal, Doc. 1, at 3.

Plaintiffs argue that the above-referenced portion of the Service Agreement does not constitute a forum-selection clause, but only a choice-of-law provision.  In the alternative, Plaintiffs argue that the forum-selection clause is permissive, unreasonable, and unenforceable against the Non-Contracting Plaintiffs who did not voluntarily submit to the provision.  Defendants maintain that the Service Agreement provision constitutes a reasonable and mandatory forum-selection clause sufficient to bind all Plaintiffs.

Defendants alternatively request that the Court transfer this case to the United States Bankruptcy Court for the Eastern District of Texas.  Titus Transportation filed for Chapter 11 bankruptcy protection in that court on July 2, 2010.  Titus Logistic Services, LP, a company affiliated with Titus Transportation but not named as a defendant in this action, simultaneously filed for bankruptcy protection under Chapter 11.  The bankruptcy court consolidated the bankruptcy cases concerning Titus Transportation and Titus Logistic Services, LP,[10] and on May 9, 2011, the bankruptcy court issued an order confirming the debtors' Chapter 11 Plan of Reorganization.  That confirmation order provides:

> The Plan is binding upon all entities regardless of whether the claim or interest of any person is impaired under the Plan, all entities are permanently enjoined from prosecuting any claim or interest against the Reorganized Debtors or property of the estates, whether or not a proof of claim or interest based on any such debt, liability or interest was filed under 11 U.S.C. § 501 and whether or not such claim or interest is allowed under 11 U.S.C. § 502.
> . . . .
> Except as otherwise set forth herein, pursuant to Section 105(a) and 1142 of the Bankruptcy Code, this Bankruptcy Court shall retain and shall have exclusive jurisdiction over any matter (i) arising under the Bankruptcy Code or (ii) arising in or related to the Debtors', including but not limited to, adversary proceedings filed in these Cases as of the date hereof.[11]

---

[9] Affidavit of Brent Hagenbuch, Doc. 13-1, at 3.  Defendants attached as exhibits to their motion copies of the individual Service Agreements executed by each Contracting Plaintiff, each containing an identical provision concerning Denton County, Texas.  *See id.*

[10] The consolidated bankruptcy proceedings are pending under Case No. 10-42202 (Bankr. E.D. Tex.).

[11] Order Confirming Debtors' Second Amended Plan of Reorganization, As Modified, Doc. 13-22, at 1.

No named Plaintiff, class of Plaintiffs, or individual member of Plaintiffs' class, has filed a claim in the bankruptcy case.

## II.    Standards

### A.    Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(3)

"This Court considers a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3)."[12]   When a defendant challenges venue, the plaintiff bears the burden of proving that venue properly lies in the district.[13]   "In order to meet his burden at the motion to dismiss stage, a plaintiff must present only a prima facie showing of venue."[14]   "In assessing whether a plaintiff has met its burden, the facts alleged in a plaintiff's complaint are taken as true, but only to the extent they are uncontroverted by the defendant's evidence."[15]   The Court's consideration of evidence and affidavits outside of the pleadings does not convert a Rule 12(b)(3) motion to a motion for summary judgment.[16]   If the parties do present conflicting evidence, the Court is

---

[12] *Mozingo v. Trend Pers. Servs.*, 2011 WL 3794263, *2 (D. Kan. Aug. 25, 2011) (citing *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 956 (10th Cir. 1992)); *K & V Scientific Co., Inc. v. BMW*, 314 F.3d 494 (10th Cir. 2002).

[13] *Johnson v. N. States Power Co.*, 2000 WL 1683658, *2 (D. Kan. Nov. 2, 2000) ("Because Defendants challenge venue in the District of Kansas, Plaintiff bears the burden of establishing that venue properly lies in this district.").

[14] *McKinzy v. Missouri Div. of Child Support Enforcement*, 2010 WL 2232699, *3 (D. Kan. June 1, 2010) (citation omitted).

[15] *See Pierce v. Shorty Small's of Branson Inc.*, 137 F.3d 1190, 1192 (10th Cir. 1998) (holding that a plaintiff may rely on the well-pled facts in the Complaint "only to the extent that such facts are uncontroverted by defendant's affidavit").

[16] *Topliff v. Atlas Air, Inc.*, 60 F. Supp. 2d 1175, 1176 (D. Kan. 1999) ("The court has found nothing in the Federal Rules of Civil Procedure that makes Rule 56 applicable to motions filed under Rule 12(b)(2) and (3) when matters outside of the pleadings are presented."); 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. CIV. § 1352 (3d ed. 2012).

inclined to give greater weight to the plaintiff's version of the jurisdictional facts and to construe such facts in the light most favorable to the plaintiff.[17]

### B.  Motion to Transfer Pursuant to 28 U.S.C. §§ 1404(a) & 1406(a)

Under 28 U.S.C. § 1404(a), the Court may transfer a case to any district or division where it might have been brought for "the convenience of the parties and witnesses" and "in the interest of justice."[18]   Similarly, under 28 U.S.C. 1406(a), the Court may serve the interests of justice by transferring a case laying venue in the wrong district.[19]  "The decision whether to grant a motion to transfer is within the sound discretion of the district court."[20]   The Court considers the following factors to determine whether transfer is proper:

> (1) plaintiff's choice of forum; (2) the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; (3) the cost of making the necessary proof; (4) questions as to the enforceability of a judgment if one is obtained; (5) relative advantages and obstacles to a fair trial; (6) difficulties that may arise from congested dockets; (7) the possibility of the existence of questions arising in the area of conflict of laws; (8) the advantage of having a local court determine questions of local law; and (9) all other considerations of a practical nature that make a trial easy, expeditious and economical.[21]

---

[17] *M.K.C. Equip. Co., Inc. v. M.A.I.L. Code, Inc.*, 843 F. Supp. 679, 683 (D. Kan. 1994) (explaining that "all factual disputes should be resolved in favor of plaintiff"); 5B FED. PRAC. & PROC. CIV. § 1352 (same); *cf. Williams v. Bowman Livestock Equip. Co.*, 927 F.2d 1128, 1130 (10th Cir. 1991) (stating the same rule in the context of a personal jurisdiction analysis).

[18] 28 U.S.C. § 1404(a).

[19] 28 U.S.C. 1406(a).

[20] *Fishermans Surgical Instruments, LLC v. Tri-Anim Health Servs, Inc.*, 320 F. Supp. 902, 904 (D. Kan. 2006) (citing *Scheidt*, 956 F.2d at 965).

[21] *Chrysler Credit*, 928 F.2d 1509, 1516 (10th Cir. 1991) (quoting *Tex. Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967)).

The defendant bears the burden of proof to make a strong showing that the facts weigh heavily in favor of transfer, and the plaintiff's choice of forum is afforded considerable weight.[22] A plaintiff's choice of forum should not be disturbed unless the relevant factors strongly weigh in favor of the moving defendant.[23]   Courts in this circuit have recognized that when reviewing a motion to transfer, "a court may consider evidence outside of the pleadings but must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party."[24]

### III.      Analysis

### A.  Application of the Service Agreement Clause Concerning Denton County, Texas

Plaintiffs first argue that the relevant provision of the Service Agreement does not constitute a forum-selection clause or a jurisdiction-selection clause at all.   Rather, Plaintiffs argue that the entire provision merely represents a choice-of-law clause.   The Court disagrees. Paragraph fifty-eight of the Service Agreement provides, "[t]he validity, obligations, relationship of the Carrier and the Contractor and interpretation of the agreement are to be determined according to the laws of the state of Texas.   All sums due and payable and all rights enforceable hereunder, shall be due and payable and enforceable in Denton County, Texas."[25]   The Court agrees that the first sentence of that paragraph clearly constitutes a choice-of-law provision. However, agreements often contain a single paragraph with two subparts, each representing a

---

[22] *Scheidt*, 956 F.2d at 966; *KCJ Corp. v. Kinetic Concepts, Inc.*, 18 F. Supp. 2d 1212, 1214 (D. Kan. 1998); *Allstate Ins. Co. v. Employers Reinsurance Corp.*, 715 F. Supp. 1502, 1503 (D. Kan. 1989).

[23] *Scheidt*, 956 F.2d at 965; *Dow Chem. Corp. v. Weevil-Cide Co.*, 630 F. Supp. 125, 130 (D. Kan. 1986).

[24] *Sleepy Lagoon, Ltd. v. Tower Group, Inc.*, 809 F. Supp. 2d 1300, 1306 (N.D. Okla. 2011) (citations omitted); *Cottonwood Natural Res., Ltd. v. Circle Star Energy Corp.*, 2012 WL 3839536, *3 (N.D. Okla. Sept. 5, 2012) (citations omitted).

[25] Affidavit of Brent Hagenbuch, Doc. 13-1, at 3 (providing sworn testimony that the Service Agreement for each Contracting Plaintiff contained the same clause).

distinct choice-of-law and forum-selection clause.[26]  The Court finds that the second sentence of paragraph fifty-eight goes beyond a choice-of-law provision to identify Denton County, Texas, as an appropriate place of forum, venue, or jurisdiction.  Therefore, the Court must determine the application and effect of the Service Agreement's provision that "[a]ll sums due and payable and all rights enforceable hereunder, shall be due and payable and enforceable in Denton County, Texas."[27]

As a preliminary matter, the Court must determine which law governs the application and interpretation of the Service Agreement's clause concerning Denton County, Texas.  Because contracts designating a place of jurisdiction or venue may implicate both state substantive law and federal procedural law, courts have struggled with which law to apply, and the Tenth Circuit has not issued a definitive statement regarding the issue.[28]  The Service Agreement in this case provides that Texas law shall govern the "validity, obligations, relationship of the Carrier and the Contractor and interpretation of the agreement."[29]  However, even when a choice-of-law clause provides that a particular state's substantive law governs the parties' agreement, federal

---

[26] *See Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342, 1345-46 (10th Cir. 1992) (finding that a single paragraph included both choice-of-law and forum-selection provisions).

[27] Affidavit of Brent Hagenbuch, Doc. 13-1, at 6.

[28] *See Excell, Inc.*, 106 F.3d at 321 (listing approaches adopted by various courts); *K & V. Scientific*, 314 F.3d at 497 (accepting a district court's decision to use federal common law because parties did not object); *Excell, Inc.*, 106 F.3d at 320 (declining to decide between the application of federal and state law because "no material discrepancies" existed between the two outcomes); *SBKC Service Corp. v. 1111 Prospect Partners, L.P.*, 105 F.3d 578, 581 (10th Cir. 1997) (avoiding the matter altogether by finding that the provision at issue was not a "forum-selection clause").

[29] Affidavit of Brent Hagenbuch, Doc. 13-1, at 3.

procedural law generally governs the application of clauses designating a place of jurisdiction or venue under a motion to dismiss or to transfer under Rule 12(b)(3).[30]

When confronted with a forum-selection clause and a substantive choice-of-law provision, courts in this circuit often apply federal procedural law to determine the effect of the forum-selection or jurisdiction-selection clause, especially when the outcome under state and federal law is consistent and when the parties agree that federal law governs.[31]  The parties in this case appear to recognize and approve of this approach, as both Plaintiffs and Defendants rely exclusively upon federal procedural law.[32]  Because the parties agree that federal law governs, and because the Court finds that no material difference would result from the application of either law,[33] the Court will follow the trend in this circuit to apply federal procedural law in

---

[30] *See Johnson*, 2000 WL 1683658 at *3 (holding that federal law, not state law, governs the application of a forum-selection clause despite a contractual choice-of-law provision stating that "The validity, interpretation, construction, performance, enforcement and remedies of or relating to this Agreement, and the rights and obligations of [Energy Solutions] and [Plaintiff], shall be governed by the substantive laws of the State of Minnesota . . . .").

[31] *TH Agric. & Nutrition, L.L.C. v. Ace European Group Ltd.*, 416 F. Supp. 2d 1054, 1075 (D. Kan. 2006) (finding it unnecessary to decide between state and federal law when no material discrepancies existed between them); *Excell, Inc.*, 106 F.3d at 320-21 (declining to choose between state law and federal common law in enforcing forum-selection clause where the parties did not discuss the issue and the court found no material discrepancies between the two); *Mozingo*, 2011 WL 3794263 at *2; *K & V. Scientific*, 314 F.3d at 497 (accepting a district court's decision to use federal common law because parties did not object); *SBKC Service Corp.*, 105 F.3d at 581 (avoiding the matter altogether by finding that the provision at issue was not a "forum-selection clause").

[32] Memorandum in Support of Defendants' Motion to Dismiss for Improper Venue Based Upon a Forum-selection Clause, Doc. 11, at 5 (citing authority for the proposition that federal law governs); Memorandum in Support of Plaintiffs' Response to Defendants' Motion to Dismiss, Doc. 21 (relying exclusively on federal procedural law).

[33] *Excell, Inc.*, 106 F.3d at 321; *SBKC Service Corp.*, 105 F.3d at 581 (holding that a court may forego a decision on which law governs "because the result would be the same in either case").  The Tenth Circuit and Texas state courts have distinguished between mandatory and permissive forum-selection clauses. *See K & V Scientific*, 314 F.3d at 498 (recognizing the permissive-mandatory distinction); *In re Wilmer Cutler Pickering Hale & Dorr LLP*, 2008 WL 5413097, *4 (Tex. App. Dec. 31, 2008) (distinguishing mandatory forum-selection clauses from permissive provisions that merely submit to jurisdiction in a designated place).  Even if the courts of a particular state explicitly reject the permissive-mandatory dichotomy, application of federal procedural law remains appropriate when identical outcomes would result due to the state's distinction between mandatory forum-selection clauses and provisions that merely consent to jurisdiction in a designated place. *McKenna v. CDC Software, Inc.*, 2008 WL 4197740 (D. Colo. Sept. 9, 2008).

determining the application of the Service Agreement's clause concerning Denton County, Texas.

The Tenth Circuit has recognized that forum-selection provisions are generally "prima facie valid."[34]  However, the mere existence of such a clause "neither imposes an absolute duty, nor endows an absolute right, to litigate the dispute in the named forum."[35]  Rather, the applicability and enforceability of a forum-selection clause depends upon its classification as mandatory or permissive.[36]  "Mandatory forum-selection clauses contain clear language showing that jurisdiction is appropriate only in the designated forum."[37]  "In contrast, permissive forum-selection clauses authorize jurisdiction in a designated forum, but do not prohibit litigation elsewhere."[38]  When a forum-selection clause specifies a venue by naming a particular county or tribunal, and the designation is accompanied by mandatory or obligatory language, courts generally enforce the clause as mandatory.[39]  However, "[w]here the forum-selection clause only specifies jurisdiction, the clause generally is not mandatory absent some further language indicating the parties' intent to make venue exclusive."[40]  "[T]he controlling factor in governing

---

[34] *Riley*, 969 F.2d at 957 (quoting *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 (1972)).

[35] *See, e.g. Hancock v. Am. Tel. & Tel. Co., Inc.*, 804 F. Supp. 2d 1196, 1200-01 (W.D. Okla. 2011) (citing *Excell, Inc.*, 106 F.3d at 321).

[36] *Id.*; *K & V. Scientific*, 314 F.3d at 498.

[37] *K & V Scientific*, 314 F.3d at 498 (quoting *Excell, Inc.*, 106 F.3d at 321)).

[38] *Id.*

[39] *American Soda, LLP v. U.S. Filter Wastewater Group, Inc.*, 428 F.3d 921, 927 (10th Cir. 2005) (citation and footnote omitted).

[40] *TH Agric.*, 416 F. Supp. 2d at 1074-75 (citing *K & V Scientific*, 314 F.3d at 499).

enforcement of a venue provision in any agreement by confining venue to a specific court is whether the parties intended to commit the actions to that court to the exclusion of all others."[41]

Defendants argue that the provision in the Service Agreement constitutes a mandatory forum-selection clause because it includes the word, "shall" and because it identifies a specific place, Denton County, Texas.  In support of their argument, Defendants primarily rely upon *Home Basket Co., LLC v. Pampered Chef, Ltd.*[42]  The defendant in *Home Basket* filed a motion to dismiss for improper venue based upon the following forum-selection clause: "The sole and exclusive jurisdiction for the purpose of resolving any dispute shall be the United States District Court, Northern District of Illinois, Eastern Division."[43]  After recognizing that "[t]he use of the word 'shall' generally indicates a mandatory intent unless a convincing argument to the contrary is made,"[44] the court granted the defendant's motion to dismiss.[45]  The court in *Home Basket* determined that the provision constituted a mandatory forum-selection clause specifically because "it designate[d] an exclusive forum and use[d] the word 'shall.'"[46]

Plaintiff argues that *Home Basket* is distinguishable from the present case because the Service Agreement does not contain terms like "exclusive," "sole," or "only," that would express the parties' desire to make the named forum exclusive.  The Court agrees.  Like the clause described in *Home Basket*, the relevant provision of the Service Agreement identifies a place and includes the word, "shall."  However, the provision in *Home Basket* designated a forum as "[t]he

---

[41] *SBKC Service Corp.*, 105 F.3d at 582.

[42] 2005 WL 82136 (D. Kan. Jan. 12, 2005).

[43] *Home Basket*, 2005 WL 82136, at *2.

[44] *Id.*; *see Milk 'N' More, Inc.*, 963 F.2d at 1346 (holding that the word "shall" generally conveys mandatory intent).

[45] *Id.* at *6-7.

[46] *Id.* at *5.

sole and exclusive" jurisdiction for the resolution of disputes, while the Service Agreement's provision lacks such exclusionary language.  In fact, the court in *Home Basket* expressly held that the clause it reviewed was mandatory because it included *both* the word "shall" *and* additional language clearly indicated that the designated forum was exclusive.[47]   Accordingly, *Home Basket* does not support Defendants' argument that the word "shall" is independently sufficient to identify the named forum as exclusive or mandatory.  To the contrary, *Home Basket* demonstrates that additional, exclusivity language is required.  The Tenth Circuit recognized this principle in *K & V Scientific Co. v. BMW*,[48] where it held that a forum-selection clause providing that jurisdiction or venue "shall" be proper in a designated place remains permissive when it fails to use additional exclusive terms, like "exclusive," "sole," or "only."[49]

The provision in this case lacks the exclusive terminology necessary to prohibit litigation outside of Denton County, Texas.  Instead, the Service Agreement merely provides that Denton County, Texas, is a place where the parties' contractual obligations and rights "shall be . . . pay*able* and enforce*able* . . . ."[50]  When confronted with provisions lacking express language of limitation but stating that certain rights "shall be enforceable" in a designated place, courts have consistently classified such clauses as permissive.[51]  It is well established in this district that

---

[47] *Home Basket*, 2005 WL 82136, at *5.

[48] 314 F.3d 494 (10th Cir. 2002).

[49] *K & V Scientific*, 314 F.3d at 500 (finding a forum-selection clause permissive because "there [was] no use of the terms 'exclusive,' 'sole,' or 'only.'").

[50] Affidavit of Brent Hagenbuch, Doc. 13-1, at 3 (emphasis added).

[51] *Keaty v. Freeport Indonesia, Inc.*, 503 F.2d 955 (5th Cir. 1974) (finding a clause ambiguous and permissive when it provided that an "agreement shall be . . . enforceable according to the law of the State of New York and the parties submit to the jurisdiction of the courts of New York," but lacked express language of limitation); *Northern California Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1037 (9th Cir. 1995) (classifying a clause as permissive when it provided that rights "shall be enforceable by a petition to confirm an arbitration award filed in the Superior Court of the City and County of San Francisco," but lacked

when a provision merely authorizes the parties to enforce rights in one place without prohibiting litigation elsewhere, a forum-selection clause must be regarded as permissive.[52]  Because the relevant provision of the Service Agreement does not contain exclusive language prohibiting litigation outside of Denton County, Texas, the Court finds the clause permissive.

Additionally, it is axiomatic in this circuit that courts must construe an ambiguous forum-selection or jurisdiction-selection clause against its drafter.[53]  It is apparent on the face of the Service Agreement that Defendant Titus Transportation drafted the subject clause.  The Court finds the Service Agreement's provision ambiguous in two distinct ways.  First, because the Service Agreement merely states that the parties' rights and obligations shall be payable and enforceable in Denton County, Texas, reasonable minds could disagree regarding whether the provision constitutes a forum-selection clause or merely reflects the parties' submission to jurisdiction in a designated place.  Construing the provision against Titus Transportation, the Court finds that the Service Agreement's provision constitutes a consent-to-jurisdiction clause, which is permissive in nature.[54]  Second, even if the Court construed the Service Agreement provision as a forum-selection clause instead of a non-exclusive submission to jurisdiction, the parties' briefs demonstrate that reasonable minds can differ regarding whether the forum-

---

expressly exclusive language); *S & B Engineers & Constructors, Ltd. v. Alstom Power, Inc.*, 2004 WL 2360034, *5 (N.D. Tex. Oct. 19, 2004) (holding that a clause is permissive if it provides that an agreement "shall be enforceable in the Courts of the Commonwealth of Virginia," but does not include language indicating that litigation is precluded elsewhere); *Integrated Mgmt. Sys., Inc. v. Maity*, 2012 WL 162282, *8 (E.D. Mich. Jan. 19, 2012) (classifying as permissive a forum-selection clause providing that a contract "shall be enforceable under the laws of the State of Michigan and in the courts located in Washtenaw County," but "lack[ed] the limiting language of an exclusive choice of forum clause").

[52] *TH Agric.*, 416 F. Supp. 2d at 1074-75.

[53] *Milk 'N' More, Inc.*, 963 F.2d at 1344 (citing *Keaty*, 503 F.2d at 957).

[54] *See Caldas & Sons, Inc. v. Willingham*, 17 F.3d 123, 127 (5th Cir. 1994) (construing an ambiguous forum-selection clause against drafter as permissive); *Citro Florida, Inc. v. Citrovale, S.A.*, 760 F.2d 1231, 1232 (11th Cir. 1985) (construing ambiguous forum-selection clause against drafter "as a non-exclusive consent to jurisdiction"); *Keaty*, 503 F.2d at 957 (same).

selection clause prohibits litigation outside of Denton County, Texas.  Again, construing the provision against Titus Transportation, the Court finds the clause permissive.[55]

    Because the Service Agreement's provision is ambiguous and lacks exclusive language prohibiting litigation outside of Denton County, Texas, the Court finds the clause permissive and unenforceable.  The Court considers the merits of applying this permissive provision in the analysis below concerning discretionary transfer pursuant to 28 U.S.C. § 1404(a).  Having determined that the Service Agreement does not contain a mandatory forum-selection clause, the Court does not reach whether Plaintiffs can avoid a mandatory provision by showing that enforcement would be unreasonable or unjust.[56]  Similarly, the Court need not address the parties' contentions regarding whether the Service Agreement provision applies to particular parties or claims.  Defendants' motion to dismiss or transfer is therefore denied as it relates to the Service Agreement's provision concerning Denton County, Texas.

### B.  Discretionary Transfer Pursuant to 28 U.S.C. § 1404(a)

    Alternatively, Defendants request that the Court transfer this action to the United States District Court for the Eastern District of Texas or to the United States Bankruptcy Court for the Eastern District of Texas pursuant to 28 U.S.C. §§ 1404(a) & 1406(a).  Transfers under 28 U.S.C. § 1404(a) differ from transfers under 28 U.S.C. § 1406(a).[57]  "In the case of § 1404(a), both the transferor and the transferee court have venue over the action, but it is more efficient to

---

[55] *K & V Scientific*, 314 F.3d at 500-01 (finding a forum-selection clause ambiguous and construing the provision against its drafter to find the clause permissive).

[56] *See Pure Energy Club, LLC v. Williams*, 2011 WL 2579757, *3 (D. Utah June 28, 2011) (holding that while mandatory forum-selection clauses will be enforced "unless enforcement is shown by the resisting party to be unreasonable under the circumstances," permissive forum-selection clauses are completely unenforceable.)

[57] *Chrysler Credit*, 928 F.2d at 1515.

prosecute the action in the latter court."[58]  "Conversely, in the case of § 1406(a), the transferor court lacks venue and must transfer the action in order for it to proceed."[59]  Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ."[60]  Because fourteen of the fifteen named Plaintiffs are Kansas residents asserting claims primarily involving events occurring in Kansas, including a principal claim involving withholding of a Kansas personal property tax, the Court finds that venue is proper in this district.  Because this Court does not lack venue, the Court will analyze Defendants' motion to transfer under 28 U.S.C. § 1404(a), which provides, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."[61]  As noted above, under section 1404(a), Defendants bear the burden of establishing that the action should be transferred because the existing forum is inconvenient.[62]

Congress broadly designed section 1404(a) to allow transfer instead of dismissal.[63]  "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness."[64]  The statute permits a "flexible and individualized analysis," and affords district

---

[58] *Id.*

[59] *Id.*

[60] 28 U.S.C. § 1391(b)(2).

[61] 28 U.S.C. § 1404(a).

[62] *C2 Communications Technologies, Inc. v. PAETEC Corp.*, 2009 WL 5204266, *2 (D. Kan. Dec. 22, 2009) (citing *Texas E. Transmission Corp. v. Marine Office-Appleton & Cox Corp.*, 579 F.2d 561, 567 (10th Cir. 1978)).

[63] *Van Dusen v. Barrack*, 376 U.S. 612, 634 (1964).

[64] *Chrysler Credit*, 928 F.2d at 1515 (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

courts the opportunity to look beyond a narrow or rigid set of considerations in making a determination.[65]   Considering the various factors stated above, the Court finds that Defendants have failed to demonstrate that transfer is appropriate.

In this case, Plaintiffs' choice to litigate in Kansas should be given great weight and should not be disturbed unless the balance of factors weighs strongly in favor of transfer.[66]   The Court finds that this district allows for convenient access to witnesses and sources of proof. Plaintiffs almost exclusively reside in Kansas.  Defendants conducted business in this district hauling freight for grocery stores in Kansas.  Additionally, the claims in this case involve the withholding of Kansas taxes, which may require evidence from the Kansas Department of Revenue or the Kansas Division of Motor Vehicles.  With regard to the remaining factors governing transfer, the Court finds that they are generally neutral and do not weigh strongly in favor of transfer.  Accordingly, the Court holds that transfer would not promote the convenience of the parties and witnesses in this case.

The "interest of justice" is a separate element of the transfer analysis that relates to the court system's efficient administration.[67]   "For this element, courts look to factors including docket congestion and likely speed to trial in the transferor and potential transferee forums; each court's relative familiarity with relevant law; the respective desirability of resolving controversies in each locale; and the relationship of each community to the controversy."[68]   In some circumstances, "[t]he interest of justice may be determinative, warranting transfer or its

---

[65] *Stewart*, 487 U.S. at 29.

[66] *Scheidt*, 956 F.2d at 965 (10th Cir.1992); *F.J. Joseph, Inc. v. Lida Adver., Inc.*, 991 F. Supp. 1283, 1285 (D. Kan. 1998).

[67] *Van Dusen*, 376 U.S. at 626-27.

[68] *Research Automation, Inc. v. Schrader–Bridgeport Int'l, Inc.*, 626 F.3d 973, 977 (7th Cir. 2010) (citations omitted).

denial even where the convenience of the parties and witnesses points toward the opposite result."[69]  The Tenth Circuit has interpreted the phrase—"if it is in the interest of justice"—to grant a district court broad discretion in determining whether to transfer the action.[70]

The Court finds that the interest of justice does not compel a result different from the Court's determination above regarding the convenience of parties and witnesses.  Because Plaintiffs predominately reside in Kansas and assert state-law tort claims regarding Defendants' operation of business in Kansas, this district represents a desirable locale for resolving the parties' dispute.  While the Service Agreement contains a choice-of-law clause providing that its application shall be governed by Texas law, The Court finds that this factor is alone insufficient to warrant transfer.[71]

### C. Jurisdiction Notwithstanding the Titus Transportation Bankruptcy

Finally, the Court turns to Defendants' motion to transfer this case to the United States Bankruptcy Court for the District of Texas (the "Texas bankruptcy court"), where Titus Transportation has filed a Petition for Chapter 11 bankruptcy protection.  Defendants assert that the Texas bankruptcy court has exclusive jurisdiction over any matter related to Titus Transportation, thereby depriving this Court of jurisdiction.  The Court rejects Defendants' argument.

On November 2, 2011, just over one month before filing the present motion to dismiss, Defendants sought removal of this action by acknowledging that "[t]his Court has original

---

[69] *Id.* at 977 (citing *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220–21 (7th Cir. 1986)).

[70] *Driggers v. Clark*, 422 Fed. App'x. 747, 749-50 (10th Cir. 2011) (citing *Trujillo v. Williams*, 465 F.3d 1210, 1222 (10th Cir. 2006)).

[71] *F.J. Joseph, Inc. v. Lida Adver., Inc.*, 991 F. Supp. 1283, 1285 (D. Kan. 1998) ("[W]hile the substantive law of Missouri may govern this action, the Court does not find that this factor alone warrants a transfer.").

jurisdiction of this matter under 28 U.S.C. § 1332(a)."[72]   Defendants recognized this Court's authority to exercise jurisdiction sixteen months after Titus Transportation filed for Chapter 11 protection and nearly six months after the Second Amended Plan was confirmed.[73]   The Court is not persuaded by Defendants' new position, and the Court finds that it has original jurisdiction over this matter because Plaintiffs and Defendants are citizens of different States.[74]

Nonetheless, Defendants contend that the Texas bankruptcy court has exclusive jurisdiction over this dispute pursuant to a jurisdiction-retention provision contained in the Second Amended Plan: "this Bankruptcy Court shall retain and shall have exclusive jurisdiction over any matter . . . related to the Debtors . . . ."[75]   Such jurisdiction-retention clauses do not provide bankruptcy courts with an independent basis for jurisdiction.[76]   Rather, the scope of a bankruptcy court's authority "must be determined by closely analyzing whether its actions fall within the jurisdictional grant of 28 U.S.C. §§ 157 and 1334."[77]

Under 28 U.S.C. §§ 157 and 1334, a bankruptcy court may hear and decide cases that either arise under or "relate to" Title 11.[78]   Because this case primarily involves state-law causes of action, this matter does not constitute a "core" proceeding directly arising under bankruptcy

---

[72] Notice of Removal, Doc. 1, at 3.

[73] *Compare id.* (Notice of Removal filed November 2, 2011) *with* Affidavit of Brent Hagenbuch, Doc. 13-1 (indicating that Titus Transportation filed for Chapter 11 bankruptcy protection on July 2, 2010).

[74] 28 U.S.C. § 1332(a)(1).

[75] Order Confirming Debtors' Second Amended Plan of Reorganization, As Modified, Doc. 13-22, at 1.

[76] *In re Houlik*, 2012 WL 5312637, *7 (B.A.P. 10th Cir. Oct. 29, 2012).

[77] *Id.*

[78] *See* 28 U.S.C. § 157(a) (permitting district courts to refer cases "related to" Title 11 to bankruptcy courts); 28 U.S.C. § 1334 (providing that district courts shall have original jurisdiction over matters arising under or "relating to" Title 11).

law.[79]  Accordingly, a bankruptcy court may only exercise jurisdiction if this case "relates to" the

Titus Transportation bankruptcy.   While 28 U.S.C. § 1334 does not define "related to"

jurisdiction, the Tenth Circuit has adopted the formulation first articulated in *Pacor, Inc. v.*

*Higgins*,[80] which provides that the "test for determining whether a civil proceeding is related in

bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the

estate being administered in bankruptcy."[81]  Bankruptcy courts are generally deprived of "related

to" jurisdiction when the property of an estate is revested with a reorganized debtor following

confirmation.[82]  Here, the Second Amended Plan revested all property of the estate with Titus

Transportation.[83]  Because no assets remain in the bankruptcy estate following confirmation, the

Texas bankruptcy court lacks "related to" jurisdiction, and this action may proceed

notwithstanding any automatic stay.[84]

Finally, even if this action were sufficiently "related to" the Titus Transportation

bankruptcy, the United States Supreme Court's decision in *Stern v. Marshall*[85] would

nonetheless undermine jurisdiction in the Texas bankruptcy court.  In *Stern*, the Supreme Court

held that 28 U.S.C. § 1334 is unconstitutional because it permits bankruptcy judges without

---

[79] *See Houlik*, 2012 WL 5312637 at *7 (holding that state-law causes of action do not constitute core proceedings that arise under bankruptcy law).

[80] 743 F.2d 984 (3d Cir. 1984); *see In re Gardner*, 913 F.2d 1515, 1518 (10th Cir. 1990) (adopting the test articulated in *Pacor*); *Celotex Corp. v. Edwards*, 514 U.S. 300, 308, fn. 6 (1995) (recognizing that "The First, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits have adopted the *Pacor* test with little or no variation").

[81] *Pacor*, 743 F.2d at 994.

[82] *See Houlik*, 2012 WL 5312637 at *7.

[83] Order Confirming Debtors' Second Amended Plan of Reorganization, As Modified, Doc. 13-22, at 9.

[84] *See* 11 U.S.C. § 362(c)(1)  (providing that the automatic stay expires once a debtor's assets are no longer property of the estate).  The Court notes that the record before it fails to indicate whether Plaintiffs were notified of the Titus Transportation bankruptcy Petition, Plan, or Confirmation.  Given the narrow scope of Defendants' motion, however, the Court does not reach the application and expiration of the automatic stay.

[85] 131 S. Ct. 2594 (2011).

Article III protections to decide state-law claims involving entities not otherwise involved in the bankruptcy proceedings.[86]  "Congress may not bypass Article III simply because a proceeding may have *some* bearing on a bankruptcy case; the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process."[87] As discussed above, the Court finds that this case neither arises under nor sufficiently "relates to" Titus Transportation's bankruptcy proceedings.  Because this case involves state-law claims concerning numerous parties not otherwise involved in the Titus Transportation bankruptcy proceedings, the Court finds that the Texas bankruptcy court lacks exclusive jurisdiction over this dispute.

**IT IS ACCORDINGLY ORDERED** that Defendants' Motion to Dismiss for Improper Venue Based Upon Forum Selection Clause (Doc. 10) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 27th day of November, 2012.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[86] *Stern*, 131 S. Ct. at 2609-10 (citing *Northern Pipeline Const. v. Marathon Pipe Line Co.*, 458 U.S. 50, 53 (1982)).

[87] *Id.* at 2618.